## Dumars *versus* Miller.

In an action by a vendee, against his vendor, for the breach of a parol contract for the sale of land, the measure of damages is, the amount of purchase-money paid, with interest and expenses; or, if no part of the purchase-money have been paid, the expenses and trouble incurred by the vendee, in endeavouring to procure a title. He cannot, in addition, where there is no fraud, recover damages for the loss of the bargain.

Jack *v.* McKee, 9 *Barr* 235, overruled.

ERROR to the Common Pleas of *Erie county.*

This was an action of *assumpsit* by Charles Miller against Claudius Dumars, his vendor, to recover damages for the breach of a parol contract for the sale, by the defendant to the plaintiff, of a tract of about 20 acres of land with a flouring-mill thereon; and the only question presented was, as to the measure of damages.

The court below (GALBRAITH, P. J.) admitted evidence on the part of the plaintiff to prove the value of his bargain, over and above the price agreed to be paid for the land; and, in answer to points presented by the defendant's counsel, instructed the jury as follows :—

"The three several points put by the defendant's counsel involve the same principle, and really present the same question—

[Dumars *v.* Miller.]

What is the measure of damages, in an action on a parol contract for the sale of land, by the vendee against the vendor, for refusal to comply with the contract? or has the actual value of the land compared with the price at which it was agreed to be sold, anything to do with the determination of the amount to be recovered for breach of the agreement? This question has been several times before the Supreme Court, and, if we can understand the decisions, they are conflicting and unsettled; and it is impossible to reconcile them. The case of Hastings' Administrator *v.* Eckley's Administrator, 8 *Barr* 194, affirming the court below, would seem to be pretty positively overruled in the case of McDowell *v.* Oyer, 9 *Harris* 417. The latter quite distinctly establishes the principle, that the value of the land should be taken into consideration, in making up the amount of damages to be recovered. We believe this is the last decision, and we might content ourselves by determining the question, in the negative of all the points, on authority alone. If, however, it was a new question, on principle, I cannot perceive any well founded objection to it. On an executed contract—a deed with covenant of warranty—where the vendee is evicted, it is true, it has long been settled in Pennsylvania, that the vendee is limited in his recovery, no matter how valuable the improvement he may have made, to the amount of purchase-money and interest from the time of payment. I can remember when even that was a much debated and discussed question with the profession; but it has now been long settled. The reason, the best that probably could be given for it, is this: that the deed was to run through all time—both parties had the opportunity of examining the title—the vendee or his descendants might make expensive improvements—matters of taste and fancy, rendering it very difficult often to determine their real value. With a contract executory, the presumption would naturally be, that the time for its completion and final execution would be but brief, and the vendee not likely to expend large amounts in fanciful improvements, before he obtained a deed. Hence, in an executory contract, where the vendee has performed his part of the agreement, we understand the rule to be established quite as well the other way—that the vendee, on failure or refusal of the vendor to make a deed according to his contract, may recover the value of the land; and, indeed, may give in evidence his improvements, and may recover a sum as a conditional verdict, at least sufficient to make it the interest of the vendor to make a deed according to his contract. But, independent of that consideration, and when the title has failed, and the vendor cannot make title, the vendee is entitled to recover damages commensurate with the value of the land at the time the deed was to have been made. The rule of damages on the breach of a contract of sale of personal property is well settled, to be the difference between the contract price and

[Dumars v. Miller.]

that of the article at the time and place of delivery. I can see no reason why the same principle should not govern in a contract for the sale of real estate. Why, in the one case, the vendor should profit by his wrong, and suffer for it in the other. The defendant's points are determined in the negative. The jury will, therefore, take into consideration the value of the land—ascertain from the evidence, the difference, if any, between the contract price and the actual value of the land and property at the time; and, if satisfied there is sufficient evidence of a distinct and definite contract for a fixed price, and the defendant, in violation of that contract, sold to another for a higher price, give such damages as they may think just and equitable, under all the circumstances of the case."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff for $200, the defendant removed the cause to this court, and here assigned for error: 1. The admission of the evidence objected to on the trial. 2. The charge to the jury on the measure of damages.

*J. C. Marshall*, for the plaintiff in error.—There are two classes of cases arising under parol contracts for the sale of land; one, where the contract is to give a certain piece of land, in consideration of certain services, of an uncertain value, to be rendered by the vendee; the other, for a money consideration, either paid or to be paid. This court appears to have made a distinction, as to the rule of damages, between the two classes. In the first class of cases, it has been held, that the rule of damages is the value of the land at the time of the breach of the contract: Jack v. McKee, 9 *Barr* 235; Oyer v. McDowell, 9 *Harris* 417; Beach's Administrator v. Beach, cited 1 *Grant's Cas.* 145; Malaun's Administrator v. Ammon, *Id.* 123. But these cases, if law, have no application to the question for decision here.

The present case belongs to the second class, in which the party contracts to convey land, in consideration of a fixed sum to be paid to the vendor. And as to this class, it is well settled by authority, in England, that when the vendee brings his action against the vendor for violation of contract for the sale of real estate, he is not entitled to recover damages for the loss of the bargain, beyond the money paid, with interest and expenses; although it appears that a considerable profit might have been derived by him from the completion of the purchase: *Chitty on Contracts* 311; Flureau v. Thornhill, 2 *W. Bl.* 1078; Walker v. Constable, 1 *Bos. & Pul.* 306; *Sugden on Vendors* 280; *Addison on Contracts* 1142.

The law is the same in Pennsylvania: Bell v. Anderson, 2 *Dall.* 152; Ewing v. Tees, 1 *Binn.* 450: George v. Bartoner, 7 *Watts* 530; Irvine v. Bull, 4 *Id.* 287; Whitehead v. Carr, 5 *Id.*

[Dumars *v.* Miller.]

368; Malaun's Administrator *v.* Ammon, 1 *Grant's Cas.* 140; Ellet *v.* Paxton, 2 *W. & S.* 418; Hastings *v.* Eckley, 8 *Barr* 194; Bitner *v.* Brough, 1 *Jones* 127; McCahey *v.* Croghan's Administrator, 7 *Casey* 22.

*W. S. Lane,* for the defendant in error.—The ruling of the court below is sustained, both by reason and authority; it is in strict accordance with the rule laid down by Chief Justice TILGH-MAN in Ewing *v.* Tees, 1 *Binn.* 450; and the same rule of damages was enforced in Lee *v.* Dean, 3 *Wh.* 316: and see Hopkins *v.* Grazebrook, 6 *B. & C.* 31; Bitner *v.* Brough, 1 *Jones* 127; Hopkins *v.* Lee, 6 *Wheat.* 109; Jack *v.* McKee, 9 *Barr* 235; Bash *v.* Bash, *Id.* 260; McDowell *v.* Oyer, 9 *Harris* 417; Malaun's Administrator *v.* Ammon, 1 *Grant's Cas.* 123; Thurston *v.* Franklin College, 4 *Harris* 154.

The opinion of the court was delivered by

WOODWARD, J.—This was an action on the case for breach of a parol agreement to convey twenty acres of land with a flouring-mill thereon, and the only question raised upon the record for our decision, has reference to the measure of damages. The consideration of the contract was an ascertained and fixed sum of money, no part of which seems to have been paid, but the plaintiff was put to certain expenses and trouble in the preparation of title-deeds, when it was discovered the defendant could not perform the contract. He does not controvert the plaintiff's right to recover a measure of damages that will indemnify him for the trouble and expenses incurred, but the plaintiff claims damages for the value of the bargain—that is, for the value of the property beyond the consideration agreed to be paid.

It is a little curious, that, instead of taking the measure of damages that has come down to us from an antiquity as remote as the sources of the common law, the learned judge took it from the novel and ill-supported rule that was applied in Jack *v.* McKee, 9 *Barr* 235.

That was not the case of a money contract, and the peculiar ruling there, was bottomed on the uncertainty of the consideration. If, therefore, that case were good law, it would not be necessarily a rule for this case, where there was not the slightest uncertainty in the consideration. But we have overruled Jack *v.* McKee, at the present term, in Hertzog *v.* Hertzog, and it is unnecessary, therefore, to consider how its doctrine would apply to the circumstances of this case.

That a vendor who, without fraud, is unable to convey the title to real estate, which he agreed to convey, is subject to a measure of damages that regards the consideration paid, or where it has not been paid, the expenses and trouble incurred by the vendee,

[Dumars *v.* Miller.]

has always been the rule in Pennsylvania, may be seen by consulting the authorites cited in Malaun *v.* Ammon, 1 *Grant's Cas.* 136–7, and in Hertzogg *v.* Hertzogg, above mentioned. The value of the land, is sometimes spoken of as the measure of damages, but that means the value, as measured by the consideration, rather than the difference between the consideration and what the land will fetch in market. The parties fix their own estimate of the value, when they fix the consideration. If there be eviction, or failure to convey, after that consideration has been paid, it shall be returned with interest—if it have not been paid, the expenses incurred are to be reimbursed. The vendor is to restore the vendee to the condition in which he found him, but he is not bound to compensate him for the value of the bargain.

In feudal times, land was esteemed more highly than money, for reasons growing out of the feudal institutions, and the anti-commercial tendencies of the age. Hence, the recovery for breach of the covenant of warranty was in other lands. The disappointed alienee would be sure to insist on the most rigorous standard of compensation, but, says Ch. KENT, 4 *Com.* 475, the value was computed as it existed when the warranty was made, so that though the land had afterwards become of increased value by the discovery of a mine, or by buildings, or otherwise, yet the warrantor was not to render in value according to the then state of things, but as the land was when he made the warranty. And when personal covenants were introduced, adds the Chancellor, as a substitute for the remedy on the voucher and warranty, the established measure of compensation was not varied or affected.

This is the source of our doctrine as to the measure of damages for breach of real contracts, where there has been no fraud. It is not the rule that applies to chattel contracts, but it is the rule where the action is brought on covenants and contracts for land, whether they be executed or executory covenants and contracts.

The only ground of distinction that can be set up in favour of a higher measure, in this case, is, that the contract was left in parol. In England, such a contract would not be suable at all; nor would it be in Pennsylvania, if a well-considered Act of Assembly of 1855, had not been repealed without due consideration. Is it necessary to argue, that breach of a parol bargain about lands ought not to be visited with a more severe measure of damages, than breach of a solemn and sealed covenant? That the value of the bargain should not be recoverable in the one case, since it cannot be in the other?

If the long-continued policy of discouraging parol titles; if the opinions of judges, at every stage of our judicial history; if the testimony of experience, as to the uncertainties, the hardships, and the frauds of such titles; are insufficient to persuade judges

[Dumars *v.* Miller.]

that the rule of law is not so, and ought not to be so, then nothing that I can write will work conviction.

The court was in error in negativing the defendant's points, and in laying down a rule of damages to compensate the plaintiff for the goodness of his bargain. What he had paid and expended, by way of obtaining the title he bargained for, he was entitled to have returned to him with interest, but beyond this, there should have been no recovery.

The judgment is reversed, and a *venire facias de novo* is awarded.