## Cornelius v. Lytle, Appellant.

*Contracts—Breach of contract—Lease of farm—Measure of damages—Profits as measure of damages.*

1. Loss of profits may be compensated in damages but only in cases where they are capable of definite determination, arise immediately out of the contract, and where in immediate contemplation of both parties when the contract was made.

2. Upon an action for the recovery of damages for breach by defendant of a written contract, whereby defendant leased to the plaintiff a certain farm, of which he was the owner, for a term of three years, it appeared that when the term was to begin the owner was unable to give possession.  The court instructed the jury upon the measure of damages that the plaintiff was entitled to recover "for what profits he could have made on the farm during the

entire period of three years." *Held*, error, and further, that in such case the true measure of damages was not what plaintiff might have made out of the lease, but the value of the privilege of occupying and cultivating the farm, subject to the conditions of the lease and all the contingencies that were liable to affect the result.

Argued April 20, 1914. Appeal, No. 320, Jan. T., 1913, by defendant, from judgment of C. P. Blair Co., Oct. T., 1908, No. 368, on verdict for plaintiff in case of Harry V. Cornelius v. Edward H. Lytle. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit to recover damages for breach of a lease of farm premises. Before BALDRIGE, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $2,575.96, which was subsequently remitted to $2,075.96, and judgment thereon. Defendant appealed.

*Error assigned*, inter alia, was (3) in affirming plaintiff's third point for charge which was as follows: "The plaintiff's right of action having accrued on 6th day of April, 1908, when the breach on the part of the defendant was made, the measure of damages was the loss actually sustained by him in preparing for the execution of his contract; what profits he could have made on the farm, during the entire period of three years, and for loss actually sustained in the sale of his personal property by reason of the breach less what the plaintiff earned on the farms which he had occupied during the period of the lease."

*J. D. Hicks*, with him *J. F. Sullivan*, for appellant.

*Marion D. Patterson*, for appellee.

OPINION· BY MR. JUSTICE STEWART, July 1, 1914:

The action was for the recovery of damages for breach by defendant of a written contract dated 15th of October, 1907, whereby he had leased to the plaintiff a certain farm of which he was the owner for a term of three years. When the term was to begin the owner was unable, through no fault of his, to give possession. The one question in the case is, what is the true measure of damages under such circumstances? The instruction of the court was that plaintiff was entitled to recover "for what profits he could have made on the farm during the entire period of three years," and this is complained of as error. We think the point well taken; not that in every case where a plaintiff sues for a breach of contract for leasing, he is limited to the measure of damage which this court has repeatedly held to be the true and only measure in case of a breach of contract to sell and convey land, but for the reason that in a case like this to measure the damages· by profits · is to determine the amount by the purest speculation. Nearly every business transaction involves more or less speculation as to resulting profit; in some, profits are susceptible, if not of exact, at least reasonable determination, while others defy forecasting because depending on conditions which may or may not arise. For the former there may be a recovery, but not for the latter.

"But merely speculative profits, supposed to have been lost, have been, I think, universally discarded by this court." THOMPSON, J., in McKnight v. Radcliff, 44 Pa. 156. Certainly we have departed from the early English and American rule that denied profits as any part of the damages to be compensated, but not to the extent of allowing such damages generally. Under the better and more liberal rule the loss of profits may now be compensated in damages, but only in cases where they are capable of definite determination, Wilson v. Wernwag, 217 Pa. 82, and arise immediately out of the contract, Hoy v. Gronoble,

34 Pa. 9, and where in the immediate contemplation of both parties when the contract was made, Fleming v. Beck, 48 Pa. 309. This was a lease to farm for three years on the shares. While the business of agriculture is not exposed to the same hazard of fortune as some others, it is nevertheless subject to its own vicissitudes. It has its fruitful years, and then again its lean ones. Crops fail, markets change, and it not unfrequently happens that the farmer, in preparing to reap what he anticipates will be a rich reward for his year's labor, to his great disappointment finds that because of sudden storm or insidious pests the promised abundance has failed him. To say of a given farm that for three successive years it will yield so many bushels of wheat or rye or oats to the acre, is at best but an idle prophecy resting on no reasonable basis whatever, and which no human ingenuity or diligence could bring to pass. Exposed as agriculture must be in the nature of things to such hazards as these we have indicated, as well as others, how can it be said that its profits can be said to be capable of definitive estimation three years in advance? Would it not be merest conjecture to attempt such estimate? For like reason it cannot be said, in such case as this, that loss of profits arises immediately out of the contract. To so hold would be to eliminate all contingencies and allow the complaining party, immediately upon the breach by the defaulting party, though it occur on the first day of the term, as was the case here, to recover profits which he might never have realized and which he never spent a day's labor to earn. Nor could it have been that compensation for any such damage was in contemplation of the parties when this contract was made. To suppose otherwise would be to make the lessor an insurer of the tenant's share of the crops. It would startle the ordinary landlord to be told that in leasing his farm for three years he was brought into that relation with his tenant by legal presumption, in case of a failure on his

part to give possession to his tenant. Certainly the tenant incurs no such liability to the owner of the farm from whom he leases, and no good reason can be assigned why the liability of each to the other in this regard should not be the same.

For the reasons stated we are of opinion that error was permitted in allowing here a recovery for loss of profits. It by no means follows from what we have said that plaintiff is without redress for his disappointment, if he has lost anything of value in consequence. What he lost was nothing more or less than the opportunity which his contract afforded him. It is to be presumed, at least we will so presume for present purpose, that the contract was an advantageous one to the plaintiff. He lost this advantage by the lessor's breach. What was the value of the bargain he lost? Not, as we have seen, what he might have made out of it, McKnight v. Radcliff, supra, under the most favorable conditions not within human power to command, but the value of the privilege of occupying and cultivating the farm subject to the conditions of the lease, and all the contingencies that were liable to affect the result. This would be fairly within the range of competent evidence to determine. The acreage of the farm, its usual productiveness, its convenience to markets and its general improvements, all these might be shown, together with anything else that would enhance its attractiveness to the ordinary tenant farmer. Over against such consideration would have to be placed the uncertainty as to crops, the costs and expense in labor, money and time which, under the requirements of the lease, the lessee would be obliged to expend in order to fulfill his part. Taking all these things into consideration the value of the opportunity lost could be determined with reasonable certainty. It would rest largely on opinion of those familiar with such subjects, but that would not make the investigation peculiar.

The case of Hoy v. Grenoble, supra, it is urged, as-

serts a different rule from that which we would here apply, but we are not convinced that it does. That case lays down no general rule other than that which may be gathered from what we are about to quote. Says STRONG, J.:

"Without attempting to deduce from adjudicated cases any rule of universal application, it may suffice for the present, to refer to a few principles that seem to be supported by the better authorities. While it is well settled that a jury are not at liberty to allow mere speculative damages, yet there are cases in which a plaintiff has been held entitled to what he would have made had the contract been fulfilled: I mean, to what he would have made immediately out of the contract. The loss of such profits is not consequential, in the sense in which consequential damages are sometimes said to be too remote. They are in immediate contemplation of the parties when the contract is made."

In that case recovery was allowed for profits because under the circumstances disclosed—and the meager report of the facts in the case gives us little information with respect to them—the profits of one year's farming under a contract of employment was in immediate contemplation of the parties when the contract was made. The report of the case though meager sufficiently differentiates it from the present one on its facts. The controlling fact there was that the parties must have had a year's profit to the tenant in contemplation when the contract was made; and this accords with the general rule governing in all such cases, against which the doctrine we have asserted in this case in no wise offends. Wolf v. Studebaker, 65 Pa. 459, but repeats the rule as laid down by STRONG, J., in the earlier case, and allows a recovery for the loss of the bargain, which in that case was measured by loss of profits, the lease being a verbal one for a year's tenancy. Let these cases stand for just what each rules, that in case of failure of the lessor to give possession to a lessee who was to become tenant for

a year, the damages may be measured by the profits that tenant would have made when it appears such measure was in contemplation of the parties; but we cannot allow that they govern where the lease is for a series of years and the question of profits is necessarily one of pure speculation, and therefore could not have been in contemplation of the parties at the making of the lease.

The instructions of the court on the point we have discussed is assigned for error. The assignment is sustained and the judgment is reversed with a venire.